IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


ASHLEY R. MAYS                                        PLAINTIFF


        v.                          CIVIL NO. 12-2232


MICHAEL J. ASTRUE[1], Commissioner
Social Security Administration                        DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Ashley R. Mays, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying her claims for a period of disability and disability insurance benefits

(DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI

of the Social Security Act (Act). In this judicial review, the Court must determine whether there

is substantial evidence in the administrative record to support the Commissioner's decision. See

42 U.S.C. § 405(g).

**I.      Procedural Background:**

Plaintiff protectively filed her current applications for DIB and SSI on June 7, 2010, and

May 12, 2011, respectively, alleging an inability to work since June 1, 2010, due to a bipolar

disorder. (Tr. 90, 113, 130). An administrative hearing was held on June 21, 2011, at which

Plaintiff appeared with counsel and testified. (Tr. 26-41).

---

[1]Carolyn Colvin became the Acting Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn Colvin has been substituted for Commissioner Michael J. Astrue as the Defendant in this suit.

By written decision dated August 2, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 14). Specifically, the ALJ found Plaintiff had the following severe impairments: left knee suprapatellar plica, status post arthroscopic surgery; obesity; and bipolar disorder.  However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 15).  The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is limited to work where interpersonal contact is incidental to the work performed; where the complexity of tasks is learned and performed by rote, with few variables and little judgment required; and where supervision required is simple, direct, and concrete.

(Tr. 17).  With the help of a vocational expert, the ALJ determined Plaintiff could perform work as an assembler.  (Tr. 21).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which after reviewing additional evidence submitted by Plaintiff, denied that request on August 23, 2012.  (Tr. 1-5, 420-433).  Subsequently, Plaintiff filed this action. (Doc. 1).  Both parties have filed appeal briefs, and this case is before the undersigned for report and recommendation. (Docs. 8,9).

The Court has reviewed the entire transcript.  The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

AO72A
(Rev. 8/82)

II.    **Evidence Presented:**

At the administrative hearing held before the ALJ on June 21, 2011, Plaintiff was twenty-seven years of age and had obtained a high school education.  (Tr. 29).

The pertinent medical evidence during the relevant time period reflects the following. On June 10, 2010, Plaintiff and her family reported that Plaintiff was not doing well.  (Tr. 347). Plaintiff was noted to be exhibiting poor judgment and spending money.  Dr. Rebecca Floyd noted that Plaintiff ambulated without difficulty.  Plaintiff was noted to have intact recent and remote memory.  Plaintiff's mood was noted as anxious.  Plaintiff was instructed to increase her Seroquel.

On June 17, 2010, Dr. Floyd noted that Plaintiff was taking Seroquel.  (Tr. 345). Plaintiff's aunt reported that Plaintiff was doing better, but Plaintiff was still somewhat impulsive.  Plaintiff was to slowly increase her dose of Seroquel.

On July 1, 2010, Plaintiff reported that she had not upped her dose of Seroquel.  (Tr. 344). Plaintiff reported she was sleeping well. Dr. Floyd noted that Plaintiff's aunt reported that Plaintiff's judgment had been fine.  Dr. Floyd noted that Plaintiff would return to work the following week.

On July 20, 2010, Plaintiff presented for a follow-up for her bipolar disorder. (Tr. 342-). Plaintiff reported that she had been doing fairly well on her medication.  Plaintiff reported that when she started back to work she started to wake up at night due to elbow pain.  Plaintiff also reported problems with her knee.  Dr. Floyd diagnosed Plaintiff with bipolar disorder and knee pain.  Dr. Floyd noted that she would refer Plaintiff for an orthopedic evaluation, and that Plaintiff should increase her exercise and maintain a moderate diet.

-3-

On July 22, 2010, Plaintiff underwent a consultative mental diagnostic evaluation performed by Robert L. Spray, Jr. Ph.D. (Tr. 234-239). Plaintiff reported that she had been "mean and really angry." Dr. Spray noted that Plaintiff was working from 7:00 a.m. to 3:00 p.m. as a cashier at SAMs. Plaintiff reported she was sometimes assigned to other jobs as well. Plaintiff reported she had worked at SAMs for almost five years. Dr. Spray noted that Plaintiff and her ten-year-old son lived with Plaintiff's mother. Plaintiff reported that she had tried to live alone but reported she had spent most of her time at her mother's house so she and her son moved in with her mother. Plaintiff reported that all she wanted to do was sleep. Plaintiff reported that since she started her medication she had not had nightmares. Dr. Spray estimated Plaintiff's cognitive functioning to be in the range of 75-80. Dr. Spray noted that Plaintiff communicated adequately but in a child-like voice. Plaintiff reported she was getting along better with her mother and not yelling at her son as much. Plaintiff reported she had friends with whom she went out to eat and to the movies. Dr. Spray noted that Plaintiff appeared to have difficulty with immediate short term memory. Plaintiff was noted to have fairly good attention and concentration. Plaintiff persisted well during the exam; however, Dr. Spray noted that Plaintiff might not be as consistent in a job setting. Plaintiff also exhibited normal pace during the hearing; however, Dr. Spray noted that Plaintiff may be distracted by internal dialogue.

On August 8, 2010, Plaintiff was seen at the River Valley Urgent Care for complaints of leg pain. (Tr. 287).

On August 10, 2010, Plaintiff was seen by Dr. Robin L. Ross. (Tr. 267). Plaintiff reported a five year history of severe mood swings. Plaintiff was noted to be taking Seroquel and

-4-

to be having some mild swelling in her lower extremities.  Dr. Ross recommended slowly changing Plaintiff's medication.

On August 11, 2010, Plaintiff complained of left lower leg pain just below the knee.  (Tr. 285).  After examining Plaintiff and x-rays of the left knee, Dr. Thomas E. Cheyne diagnosed Plaintiff with a probable partial tear, left gastrocnemius.  Dr. Cheyne recommended general stretching and light activity, and that Plaintiff remain off of work for two weeks.

On August 17, 2010, Dr. Ross noted Plaintiff's report that she had had trouble sleeping.  (Tr. 268).  Plaintiff was noted to have a better mood and affect.  Plaintiff was noted to be completely off of the Seroquel.  Plaintiff reported that Dr. Floyd thought that the swelling was due to Plaintiff's work, and that Plaintiff was now off of work until the 25th.

On August 23, 2010, Plaintiff reported that she was not sleeping and that she did not feel like doing anything.  (Tr. 269).  Plaintiff reported that she was unable to complete activities of daily living, and requested to be placed back on Seroquel.  Dr. Ross started Plaintiff back on Seroquel.

On August 30, 2010, Dr. Abesie Kelly, a non-examining medical consultant, completed a mental RFC assessment stating Plaintiff had moderate limitations in the following areas: the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to sustain an ordinary routine without special supervision; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to respond appropriately to chance in the work setting; and the ability to

-5-

set realistic goals or make plans independently of others.  (Tr. 242-245).  On the same date, Dr.

Kelly completed a psychiatric review technique form indicating Plaintiff had mild restrictions

of her activities of daily living; moderate difficulties in maintaining social functioning; moderate

deficiencies of concentration persistence or pace; and had no episodes of decompensation during

the relevant time period. (Tr. 246-259). On December 9, 2010, Dr. Sheri L. Simon affirmed Dr.

Kelly's opinion as written.  (Tr. 305).  In doing so, Dr. Simon noted as follows:

> There are no new MN allegations and new MER does not endorse worsening sx.
> Reviewed updated ADLs and new Mer from Robin Ross, MD, which shows
> improvement and high Gaf...

(Tr. 305).

On September 3, 2010, Dr. Bill F. Payne, a non-examining medical consultant, opined

that Plaintiff did not have a severe physical impairment.  (Tr. 265).

On September 26, 2010, Plaintiff reported that the Seroquel was working well.  Plaintiff

reported significant leg pain, and noted that she would be seeing a surgeon the next week.

Plaintiff was to return in two months.

On October 1, 2010, upon referral by Dr. Cheyne, Plaintiff reported chronic pain in her

left knee of several months duration to Dr. Steven O. Smith.  (Tr. 282-283).  After reviewing an

MRI, Dr. Smith assessed Plaintiff with anterolateral left knee pain of uncertain etiology.  Dr.

Smith recommended an injection, which was given.

On October 11, 2010, Plaintiff reported that the injection did not help alleviate her left

knee pain.  (Tr. 281).  Dr. Smith noted that Plaintiff would be scheduled for a left knee

arthroscopy.

On October 19, 2010, Plaintiff underwent a left knee arthroscopy and resection of the suprapatellar plica and debridement of the anterior fat pad performed by Dr. Smith. (Tr. 276).

On October 29, 2010, Plaintiff was seen by Patrick Walton, PA-C, for a follow-up for her left knee after her scope. (Tr. 275). Plaintiff reported a lot of swelling. Plaintiff reported that her pain was being controlled with her medication, and that she was progressing with her therapy. Plaintiff was noted to be using crutches. Plaintiff's stitches were removed, and she was instructed to continue with therapy. Mr. Walton noted Plaintiff was to be off of work for six weeks.

On November 16, 2010, Plaintiff was seen by Dr. Smith for a follow-up for her left knee arthroscopy. (Tr. 271-272). Dr. Smith noted that Plaintiff was complaining of a lot of pain. Plaintiff reported that she did not think that she could return to work in two weeks. Dr. Smith indicated that Plaintiff should remain off of work for four weeks.

On November 30, 2010, Plaintiff reported that the Seroquel was working well. (Tr. 312). Plaintiff reported that she had undergone knee surgery, and that she continued to have pain. Plaintiff reported that she was not working and that this seemed to be the only way to regulate her mood. Subjectively, Dr. Ross noted that Plaintiff could not work and maintain her mental health. Upon examination, Dr. Ross noted Plaintiff was alert and oriented, with good eye contact, and normal speech. Plaintiff was to remain on Seroquel and to return in three months.

On December 9, 2010, Dr. Lucy Sauer, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and could push or pull unlimited,

-7-

other than as shown for lift and/or carry. (Tr. 293-300).  Dr. Sauer opined that postural, manipulative, visual, communicative or environmental limitations were not evident.

On December 16, 2010, Plaintiff reported that her left knee was buckling and giving way. (Tr. 373).  Upon examination, Dr. Smith noted significant quad atrophy.  Dr. Smith noted that he counseled Plaintiff on rehab exercises and thought Plaintiff had improved enough to return to work. (Tr. 374).  Plaintiff was also fitted with a brace.  Plaintiff was to return as needed.

On December 20, 2010, Plaintiff was seen for a follow-up for her left knee.  (Tr. 371). Dr. Smith noted that Plaintiff had been seen the previous week and at that time Plaintiff was noted to have quad atrophy.  Dr. Smith noted that he had discussed with Plaintiff that he thought Plaintiff's pain was due to her quad weakness.  Dr. Smith opined that until Plaintiff regained her quad strength she would have pain.  Dr. Smith also noted Plaintiff reported having problems with her brace, so Plaintiff was retrained on her brace use.  Plaintiff's aunt was concerned with the possibility of MS to which Dr. Smith noted there were no indications of MS.  Dr. Smith noted that a MRI of the lumbar spine could rule out a herniated disc.  Dr. Smith also noted Plaintiff's request for a second opinion and that Plaintiff could certainly obtain this from Dr. Buie.  Plaintiff was noted be able to remain off of work until January 5th, when Plaintiff was to see Dr. Buie. (Tr. 372).

On February 3, 2011, Plaintiff was seen at the Mercy Clinic River Valley Urgent Care. (Tr. 308).  Plaintiff reported that she had fallen on ice, and had hit her head.  Upon examination, Plaintiff was noted to be alert and oriented with normal strength and motor skills.  Plaintiff's gait, coordination, and balance were noted as normal.  Plaintiff's mood and affect were noted as normal.  Plaintiff was diagnosed with a concussion.  Plaintiff was seen in the emergency room

on February 12, 2011, due to her lingering headache.   (Tr. 388-418).   Plaintiff denied

musculoskeletal or psychiatric history at that time. (Tr. 415).   A CT of the head was normal and

Plaintiff was discharged in stable condition.

**III.     Applicable Law:**

     This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.   Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir.

2002).   Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.   The ALJ's decision must be

affirmed if the record contains substantial evidence to support it.   Edwards v. Barnhart, 314 F.3d

964, 966 (8th Cir. 2003).   As long as there is substantial evidence in the record that supports the

Commissioner's decision, the Court may not reverse it simply because substantial evidence exists

in the record that would have supported a contrary outcome, or because the Court would have

decided the case differently.   Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).   In other

words, if after reviewing the record it is possible to draw two inconsistent positions from the

evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ

must be affirmed.   Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

     It is well-established that a claimant for Social Security disability benefits has the burden

of proving her disability by establishing a physical or mental disability that has lasted at least one

year and that prevents her from engaging in any substantial gainful activity.   Pearsall v.

Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A),

1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by

AO72A
(Rev. 8/82)

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of her residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

## IV.  Discussion:

Plaintiff argues the following issues in this appeal: 1) the ALJ erred in determining Plaintiff's RFC; 2) the ALJ erred in determining Plaintiff's credibility; 3) the ALJ failed to fully and fairly develop the record; 4) the ALJ erred in the 12.04 Listing analysis.

### A.    The ALJ's RFC Determination:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is assessed using all relevant evidence in the record. Id.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v.

-10-

Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain

are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of

Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a

medical question."  Lauer v. Apfel,  245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's

determination concerning a claimant's RFC must be supported by medical evidence that

addresses the claimant's ability to function in the workplace.  Lewis v. Barnhart, 353 F.3d 642,

646 (8th Cir. 2003).  "[T]he ALJ is [also] required to set forth specifically a claimant's

limitations and to determine how those limitations affect his RFC."  Id.

    "The [social security] regulations provide that a treating physician's opinion ... will be

granted 'controlling weight,' provided the opinion is 'well-supported by medically acceptable

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial

evidence in [the] record.'"  Prosch v. Apfel, 201 F.3d 1010, 1012-13 (8th Cir.2000) (citations

omitted).  An ALJ may discount such an opinion if other medical assessments are supported by

superior medical evidence, or if the treating physician has offered inconsistent opinions.  Id. at

1013. Whether the weight accorded the treating physician's opinion by the ALJ is great or small,

the ALJ must give good reasons for that weighting.  Id. (citing 20 C.F.R. § 404.1527(d)(2)).

    After reviewing the evidence of record, the Court finds that Plaintiff's argument is

without merit, and that there was sufficient evidence for the ALJ to make an informed decision.

The Court notes that in determining Plaintiff's RFC, the ALJ specifically discussed the relevant

medical records, and the medical opinions of treating and non-examining medical professionals,

and set forth the reasons for the weight given to the opinions.  Renstrom v. Astrue, 680 F.3d

1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of

-11-

various treating and examining physicians")(citations omitted). With regard to the November of 2010 opinion of Dr. Ross questioning whether Plaintiff could work and maintain her mental health, the ALJ specifically addressed this report and found Dr. Ross's findings to be inconsistent with her own medical records and the medical evidence as a whole.   Davidson v. Astrue, 501 F.3d 987, 990-91 (8th Cir. 2007) (finding ALJ correctly discounted a physician's assessment report when his treatment notes contradicted the report).   The ALJ also took Plaintiff's obesity into account when determining that she could perform sedentary work with restrictions.   Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal).   Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination for the relevant time period.

**B.    Subjective Complaints and Credibility Analysis:**

The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of her medication; and (5) functional restrictions.   See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id.   As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

-12-

After reviewing the administrative record, and the Defendant's well-stated reasons set forth in her brief, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record reveals that during the relevant time period, Plaintiff reported that she was able to do household chores; take care of her personal needs; prepare simple meals; watch television, read, and do crafts; walk and drive short distances in a car alone; attend church and her son's baseball games; and shop for food and clothing.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, she has not established that she was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.      Fully and Fairly Develop the Record:**

An ALJ is required to develop the record fully and fairly. See Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000) (ALJ must order consultative examination only when it is necessary for an informed decision). After reviewing the administrative record, it is clear that the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. See Strongson v. Barnhart, 361 F.3d 1066, 1071-72 (8th Cir.2004) (ALJ must develop record fully and fairly to ensure it includes evidence from treating physician, or at least examining physician, addressing impairments at issue).

**D.      Listings of Impairments:**

The burden of proof is on the Plaintiff to establish that her impairment meets or equals a listing. See Sullivan v. Zebley, 493 U.S. 521, 530-31, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).

-13-

To meet a listing, an impairment must meet all of the listing's specified criteria. Id. at 530, 110 S.Ct. 885 ("An impairment that manifests only some of these criteria, no matter how severely, does not qualify."); Johnson v. Barnhart, 390 F.3d 1067, 1070 (8th Cir. 2004). "Medical equivalence must be based on medical findings." 20 C.F.R. § 416.926(b) (2003); Sullivan, 493 U.S. at 531 ("a claimant ... must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment").

The Court finds, based upon the record as a whole, that Plaintiff's argument is without merit, and there was sufficient evidence for the ALJ to make an informed decision. Therefore, the Court finds there is sufficient evidence to support the ALJ's determination that Plaintiff did not meet  Listing 12.04.

### E.      Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).  Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude her from performing work as an assembler.  Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

### IV.      Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our**

AO72A
(Rev. 8/82)

**report and recommendation in which to file written objections pursuant to 28 U.S.C. §**

**636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal**

**questions of fact.  The parties are reminded that objections must be both timely and**

**specific to trigger de novo review by the district court.**

DATED this 1st day of November, 2013.


/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-15-